UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| KIMMAIRE SELLERS, in her individual capacity and as mother and next of kin of the Estate of Z.B., a minor, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5: 22-077-DCR |
| V. | ) ) | |
| KAMIKA JOYNER, et al., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Kimmaire Sellers seeks to regain custody of her son.  As part of her efforts, she sued various defendants in the Fayette Circuit Court, alleging that they had violated her constitutional right to family integrity.  The defendants removed the matter to this Court, alleging federal-question jurisdiction under 28 U.S.C. § 1331.  However, this case falls within the domestic-relations exception to federal jurisdiction.  Accordingly, the matter will be remanded back to state court.

**I.**

Sellers filed two *pro se* Complaints in the Fayette Circuit Court on March 2, 2022.  The filings are similar and arise from Sellers' allegations that numerous defendants took part in wrongfully removing her son from her custody shortly after the child's birth.[1]   Both

---

[1] The Complaints differ in the following ways:  In the "first" Complaint, Sellers alleges claims in her individual capacity and on behalf of her son.  In the "second" Complaint, Sellers asserts claims in her individual capacity only.  The "second" Complaint also names additional defendants not included in the first, but does not appear to include additional factual allegations.

Complaints were docketed together under a single case number in Fayette Circuit Court—22-CI-198.  The defendants removed the matter to this Court on March 25, 2022, based on federal question jurisdiction.  Specifically, they allege that this Court has jurisdiction over the matter due to Sellers' claims that the defendants violated her rights under the United States Constitution, which she has raised *via* 42 U.S.C. § 1983.

Sellers' pleading, which the Court considers a single Complaint for purposes of its analysis, is lengthy and, at times, difficult to follow, but the basic facts are alleged as follows:

Sellers arrived at Baptist Health Hospital in Lexington, Kentucky, in labor, on May 16, 2021.  [Record No. 1-1, p. 78]  She gave birth to a healthy baby boy (Z.B.) the following morning.  At one point, nursing staff noted that a thermometer would not register the baby's temperature and sought to take him to the nursery to be warmed.  However, Sellers would not permit staff to take Z.B. to the nursery, so staff brought a portable warmer into Sellers' room to raise the baby's temperature.  Staff also found that Sellers violated sleep safety protocols when Z.B. was found with his head resting on a pillow in Sellers' bed with bedding pulled up around him.  *Id.* at 32.  And Staff reported that Sellers "ripped" off Z.B.'s ankle bracelet, complaining that it was too tight.  Sellers additionally reports that her parental rights with respect to another child were involuntary terminated over 10 years ago.  *Id.* at 90.

Sellers asserts that she and Z.B. were medically discharged on May 19, 2021.  However, Holly Rollins, R.N. had made a referral to the Kentucky Cabinet for Health and Family Services (the "Cabinet") based on Sellers' "limited prenatal care, history of mental illness and the fact that she did not acknowledge her prior born children."  *Id.* at 38.  Before Sellers and Z.B. were able to leave the hospital, Cabinet social worker Kamika Joyner came to Sellers' hospital room "to investigate abuse."  *Id.* at 14.  According to Sellers, Joyner declined her

- 2 -

request for information concerning the investigation.  Sellers asked Joyner to leave her room so that Sellers and Z.B. could go home.

Sellers attempted to leave the hospital with Z.B. but was stopped by several individuals. She alleges that Baptist Health security guard Clay Bryant choked, assaulted, and threatened her with a deadly weapon.  She further contends that a Cabinet employee called the Lexington Police Department and that Officer James Cooper came to the scene and "roughhoused" her and "violently ripped" her child from her arms.  *Id.* at 14.  Cooper then arrested her for disorderly conduct in the second degree and Z.B. was placed on a 72-hour hold.  Sellers alleges that, at some point, Z.B. "was dropped and sustained injuries."  *Id.*

Sellers was taken to the Fayette County Detention Center and released.  Joyner filed an emergency custody affidavit and petition the same day, alleging concerns of Sellers' unstable mental health, citing escalating anger, and a prior termination of parental rights from 2011. The Cabinet was awarded emergency custody and Z.B. was placed into foster care.  *Id.* at 23. On May 24, 2021, Sellers had her first court appearance and a temporary removal order was issued regarding Z.B.  *Id.* at 44.  Sellers contends that she was denied due process and the right to a fair hearing during this appearance.

Sellers was placed under a prevention plan, which only allows for supervised visitation with Z.B.  Sellers asserts that Joyner coerced her into signing the prevention plan based on threats that the Cabinet would "keep [her] child and terminate [her] rights."  Sellers reports that the case is currently under review in "the court of appeals."

Sellers filed this action in Fayette Circuit Court, asserting claims for deprivation of her constitutional right to family integrity and state-law claims of outrage against various Cabinet and hospital employees, as well as the Lexington Fayette Urban County Government and

- 3 -

Officer Cooper. Sellers seeks the return of custody of Z.B. and the dismissal of the Cabinet's petition alleging abuse and/or neglect. *Id.* at p. 25. She also seeks compensatory and punitive damages for the harm arising out of the defendants' alleged conduct based on the investigation that led to Z.B.'s removal. The defendants removed the action to this court based on the alleged presence of federal question jurisdiction. They have now filed motions to dismiss, alleging that Sellers has failed to state a claim upon which relief can be granted and that she failed to serve them properly.

## II.

Federal courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *United States v. Marshall*, 954 F.3d 823, 826 (6th Cir. 2020) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). Accordingly, as a threshold matter, the Court must ensure that it has jurisdiction over this case before proceeding to the merits of the defendants' motions to dismiss.

Federal jurisdiction appears to exist based on the face of Sellers' Complaint, as she alleges constitutional claims against the defendants under 42 U.S.C. § 1983. However, in making these claims, she expressly challenges the Fayette County Family Court's procedures and custody decisions. Further, she seeks the return of her son and dismissal of the child neglect or abuse petition that is pending against her. [Record No. 1-1, pp. 24-25]

This Court lacks jurisdiction to issue child custody decrees. *Johnson v. Collins*, 2015 WL 4546794, *3 (E.D. Ky. July 28, 2015) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)). And "[e]ven when a plaintiff raises other claims, federal courts do not have jurisdiction when the 'core' issue is one of domestic relations, meaning that the plaintiff seeks divorce, alimony, or a child custody decree." *Id.* (citing *Catz v. Chalker*, 142 F.3d 279 (6th

Cir. 1998), *opinion amended on rehearing*, 243 F.3d 234 (6th Cir. 2001), *overruled on other grounds*, *Coles v. Granville*, 448 F.3d 853, 859 n.1 (6th Cir. 2006) ("explaining that the key question is whether the case is 'a core domestic relations case, seeking a declaration of marital or parental status, or a constitutional claim in which it is incidental that the underlying dispute involves a [domestic relations dispute].").

As previously noted, while the plaintiff's Complaint is, at times, difficult to follow, there is no question that her core concerns are the family court's decisions and the return of her child. [*See e.g.,* Record No. 1-1, pp. 25-26 "I request the Court to return custody to me without delay, and to dismiss the Petition alleging Dependency and Neglect. . . .   CPS had no reason to even be at the hospital that day.  A previous involuntary termination of parental rights over a decade prior is not sole grounds for removal of a newborn baby from his mother. . . . [T]hey tested me for numerous possible drugs as well as diseases, all were negative results. Further, their records specifically note nothing abnormal under 'mental status' or 'neurological. . . .'"]  Because the core issue in this case concerns a child custody decree, the Court lacks jurisdiction.

Even if the Court had jurisdiction, it would be required to abstain under the doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971).  While pending parallel state court proceedings typically do not bar federal courts from exercising jurisdiction, the Supreme Court has identified "exceptional" situations in which federal courts must refrain from interfering with ongoing state court proceedings.  *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013).  While *Younger* involved a criminal proceeding, its holding has been extended to civil proceedings in which important state interests, such as child custody, are involved.  *See Meyers v. Franklin Cnty. Court of Common Pleas*, 23 F. App'x 201, 204 (6th Cir. 2001) (citing

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987)). Abstention in civil cases is appropriate where a state proceeding: (1) is currently pending; (2) the state proceeding implicates important state interests; and (3) the state proceeding affords the plaintiff an adequate opportunity to raise constitutional claims. *Id.* (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Sellers' Complaint indicates that the custody proceedings involving Z.B. were pending in state court at the time she filed her Complaint. A search of the Kentucky Court of Justice website indicates that they remain pending.[2] Further, the Sixth Circuit has determined that child welfare and protection are important state interests. *See id.* (citing *Moore v. Sims*, 442 U.S. 415, 423 (1979)). Finally, Sellers has an adequate opportunity in the state court to raise constitutional challenges, as she may appeal a family court order or judgment to the Kentucky Court of Appeals. *See Schriber v. Ky. Dept. of Child Protective Servs.*, 2021 WL 1877808, at *5 (W.D. Ky. May 10, 2021) (citing *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995)). Further, Sellers filed this suit in Fayette Circuit Court, which gives her an adequate forum to raise any related issues that are not before the family court.

In summary, because this Court lacks subject matter jurisdiction and, in the alternative, exercising jurisdiction would be inappropriate under *Younger*, the Court will remand this matter to state court.

### III.

Based on the foregoing analysis and discussion, it is hereby

---

[2] Kentucky Court of Justice, *Find a Case,* https://kycourts.gov/Pages/index.aspx (last accessed May 23, 2022).

**ORDERED** that this matter is **REMANDED** to the Fayette Circuit Court and **STRICKEN** from this Court's docket.

Dated: May 24, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky